JOHN H. GILMORE, plaintiff in error, vs. MARY A. JOHNSON, defendant in error.

[1.] The verdict in this case held to be supported by the evidence.

[2.] Where husband and wife are parties on one side to an agreement for the benefit of the wife and children, and they have become entitled by an advantageous part performance by the other side, to a full performance for the benefit of the wife and children, the husband cannot defeat the rights of his wife and children by a release.

[3.] It is no error to allow a complainant to give evidence in mere diminution of the defendant's proof, although the bill contains no obligation covering the evidence so introduced by complainant.

[4.] Where a complainant places a *fi. fa.* in the hands of defendant to be collected and the money used for a particular purpose, proof that the Sheriff collected the money affords a presumption that the defendant (who is legal owner of the *fi fa* by transfer) has got the money—because it places the money where he may easily get it, and where, if he does not get it, the failure is his own fault.

[5.] A bill by a wife, alleging that her husband, who was deeply in debt, had negroes, derived from her by marriage, going to sale under executions, and alleging an agreement under these circumstances on the part of her and her husband on the one side, and her brother on the other, that her brother should buy the negroes at such sale, and after reimbursing himself for his outlay, in pursuance of the agreement, should then convey the negroes to a trustee for the wife and children; and alleging that the brother has bought the negroes at prices which were greatly reduced by his making it known that he was buying for the benefit of the wife and children; and alleging further that he has reimbursed all his outlay made in pursuance of the agreement; and asking a full and specific performance of that agreement on his part—is a good bill.

[6.] And in such case the complainant is entitled to any overplus of *hire*, after allowing the brother all proper reimbursements for his outlay in pursuance of the agreement.

In Equity, in Lee Superior Court. Tried before Judge ALLEN, March Term, 1859.

This was a bill in equity, filed by Mrs. Mary A. Johnson, by her next friend, against John H. Gilmore, charging substantially that her husband, John S. Johnson, in 1844, was largely indebted, and executions about to be levied on all his property; and that knowing that the property would be sold at a great sacrifice, complainant and her husband applied to John H. Gilmore, her brother, and requested him to attend the Sheriff's sale, and become the purchaser of the property; and, after reimbursing himself out of the property, to hold the remainder in trust, for complainant and her children; that Gilmore consented to this arrangement, attended the Sheriff's sale, announced to the bidders that he was buying the property for the benefit of complainant and her children, and he thereby was enabled to buy the land worth $1,000 for $20, and negroes worth several hundred dollars for $50, and thus became the purchaser of all the property for a very small and inconsiderable amount. That to enable Gilmore to pay off said debts, John S. Johnson, the husband of complainant, placed in his hands other assets, from which he realized thirty-two hundred dollars. The bill further charged, that Gilmore had sold the land for upwards of $1,000, which, with the assets realized as above, was sufficient to reimburse him the amount paid out by him. That Gilmore had used the negroes since 1845, and that they were now in his possession, and of great value; that he had allowed complainant to use a portion of them, but refused to acknowledge the trust as to the balance. The bill further charged, that Gilmore had procured a release from John S. Johnson, of all his claims in this behalf, but this was without the knowledge or consent of complain-

ant, and in fraud of her rights. Complainant offered to account for any balance due Gilmore on the purchase, to allow him full compensation for his trouble and expense, and to do full equity in this behalf.

The prayer was for an account, and a decree compelling Gilmore to convey the property to a trustee, for Mrs. Johnson and her children.

To this bill defendant demurred

1st. Because John S. Johnson, the husband, was not made a party.

2d. For want of equity.

The Court below overruled the demurrer and that decision was excepted to, and the case brought to the Supreme Court, and that Court reversed the judgment on the first ground. See 14 *Geo. Rep.*, 683.

The complainant amended her bill, making John S. Johnson, her husband, a party, who answered, and admitted all the material allegations of the bill.

John H. Gilmore answered, admitting the facts stated in the bill as to Johnson's indebtedness, and that his sister, Mrs. Johnson, did apply to him to assist her, but states that he only told her " that he would never let her suffer as long as he had anything himself; that he did not know that he could do what she asked of him, but that he would do so if he could ;" and this is all the agreement or arrangement made by defendant, in relation to the purchase of said property; admits that he purchased the property at the time and for the sums stated, but states that he has never been repaid or reimbursed the amount paid by him on account of Johnson, and the executions and debts which he paid or got control of.

The case being submitted to the jury, upon the bill, answers, proofs and charge of the Court, they found for complainant the negroes mentioned in the bill, with their increase, except one sold by defendant, and for which they find that he pay $800, with interest from the time of sale.

Whereupon, defendant moved for a new trial on the following grounds:

1st. Because the verdict is contrary to evidence;

2d. Because the verdict is contrary to law;

3d. Because the jury found contrary to equity;

4th. Because the jury found contrary to the charge of the Court, in this, that the Court charged, " That the evidence must show that there was such a contract made by the parties as that charged in complainant's bill, and if they believed from the evidence that such a contract was made, then Gilmore, the defendant, was entitled to have the use of the property until reimbursed the amount paid out by him, principal and interest, and also a reasonable compensation for his trouble, and all amounts advanced by him for the education of complainant's children, and for her and their support and maintenance."

The Court overruled the motion and refused to grant a new trial, and defendant excepted, and in addition to error assigned for refusing the motion for a new trial, he assigns as error:

1st. That the Court erred in admitting the testimony of Philip P. Monroe, and other witnesses, on the part of complainant, going to show or prove that John H. Gilmore and his family, while complainant kept hotel in Starksville, frequently stopped there, &c. This was intended as a set-off to defendant's demand for provisions furnished complainant. The defendant objecting to its admission as illegal and irrelevant.

2d. That the Court erred in admitting the testimony of David A. Vason, Esq., that he had seen the execution (which was not before the Court or in evidence) of John S. Johnson against the administrators of John Johnson, since its transfer to defendant, and that it was satisfied as appeared from the receipt of William Janes, the former Sheriff of Lee County, endorsed on the *fi. fa.*, defendant objecting to the admission of the same.

3d. Because the Court erred in charging the jury, "that if the proof showed that such a contract was made as that set up in complainant's bill, and was partly executed by a sale of the property, it was an executed contract that they should enforce."

4th. That the Court erred in charging the jury, "that if they should be satisfied that complainant had made out her case, she was entitled to recover the property with hire."

HINES HOLT; and R. F. LYON, for plaintiff in error.

WARREN & WARREN, *contra.*

*By the Court.*—STEPHENS J. delivering the opinion.

This was a motion by the defendant for a new trial on several grounds, all of which resolve themselves into the single one, that the verdict is not supported by the evidence. We think the verdict is supported, and well supported by the evidence. It was argued that the agreement which the complainant seeks to have specifically performed, was not sufficiently proven. The defendant in his answer, while denying it in some places, in another place substantially admits it, for he says his sister asked him to do just what the bill alleges he agreed to do, and that he told her he would do so *if he could,* and then he went on and bought the property, holding off other bidders by telling them he was buying it for the benefit of his sister and her children ; thus getting what would be an unconscionable advantage, if he is to be allowed to pocket it. Can it be supposed that she and her husband would have stood by and allowed their property to be thus sacrificed, *if he had not made them believe* that he consented to the proposition ?—that he thought he *could* do it, and had actually undertaken it ? But besides this, long afterwards his sister reminded him of the agreement, and he did not deny it. The proof of the agreement was satisfactory. It

was also argued that there was no proof that the husband was a party to the agreement, as alleged in the bill. Here the argument is equally unfortunate, for the circumstantial proof is very strong that the husband *knew* of it, and *sanctioned* it, and this is all that was necessary. If he sanctioned an agreement made by his wife, he made it his own. That he did know of it and sanctioned it, is most strongly shown by the fact that he allowed the defendant to buy his property at prices which he could have prevented by only speaking, and which were ruinous to him *without the agreement*. Suppose him to know of the agreement and sanction it, and his conduct is all consistent and rational, otherwise it is foolishly absurd. It is argued, also, that the verdict is against that part of the charge which instructed the jury that they could not give the relief sought unless the evidence showed that Gilmore had been reimbursed the principal and interest paid out by him on account of the agreement, and also such sums as he had advanced for the education of the children, and the maintenance of them and their mother, together with a reasonable compensation for his services. The jury found by their verdict that he had been reimbursed for all these things, and we think the evidence was ample to satisfy them that whether or not he actually had been reimbursed, he at least had had ample means and ample time to have made the means available for that purpose. With his opportunities, he could have failed of being reimbursed only by his own gross negligence. He *ought* to have got full reimbursement, and equity considers that as having been done which ought to have been done. On any other principle he could forever defeat the complainant's relief, and continue to hold her property on no better plea than that he was making a very bad use of it. But the defendant sets up a *release* from the husband, executed after the defendant had partly executed the agreement, and at a time when he would have pocketed an unconscionable advantage by being allowed to retire from its full performance. It was argued that the verdict

Gilmore vs. Johnson.

was against the evidence, because this release, whatever other proof there was, destroyed the complainant's right to relief. Upon this release I remark, first, that it shows the defendant felt he had need of one; and, second, it implies that the husband was a party to the agreement, thus adding proof upon the points as to the existence of the agreement, and the husband's sanction of it. But it is utterly powerless to affect rights which the wife and children had acquired under the agreement. When by a part performance, disadvantageous to them, the husband and wife had become entitled to a full performance for the benefit of the wife and children, the matter passed from under the control of the husband just as effectually as if he had made a settlement upon Gilmore in trust for his wife and children. Such a settlement by him for their benefit would certainly not be revocable by him, nor could he release Gilmore from his obligation to perform the trust. In the one case it is a settlement which would be enforced because written, in the other a settlement which must be enforced because partly performed. The part performance stands in place of the writing. When the husband once raises a trust in favor of his wife and children, he cannot revoke it, although his agreement remains under his control (so far as they are concerned) until the trust is raised. An agreement which is wholly executory he may abandon or release when he pleases, but one wholly executed, or partly executed, so as to call for a full execution, vests in them rights which he cannot release nor trade off.

But there are assignments of error here besides the refusal to grant a new trial.

1st. The first is, that the Court erred in admitting the testimony of Philip P. Munroe, to show that defendant and family had frequently stayed with complainant while she kept hotel. The object of this testimony was to rebut a claim which defendant, in his answer, asked to have allowed him for supplies and provisions furnished to complainant and her children. The proof was rebutting in its character, and

was, we think, properly allowed. The objection made to it is that it proves a claim not set up in the bill—that there is no allegation to cover it. It is not a claim in which relief is sought, or a recovery asked; if it were, the objection would be good. It is only in abatement of the defendant's proof, just as it would be in abatement, after he had shown provisions furnished, to show that half of them, or some part of them had been returned to him. It goes in diminution of his proof.

2d. We think the testimony of Mr. Vason, in relation to the entry of satisfaction on the *fi. fa.*, was properly admitted. The objection to it was not that it was secondary evidence, for the *fi. fa.* was lost; but it was, that the entry of satisfaction by the Sheriff did not show that the legal owner (the defendant in this bill) had got the money. We think it does afford a presumption that he got it, because it places the money where he might *easily* have got it, and where, indeed, if he had not got it, the failure was his own fault.

3d. The third assignment of error is simply a general demurrer to the bill, and as that was overruled at a former Term of this Court, we simply refer to that decision now as authority for holding the same way again, and also as *res adjudicata.*

4th. We think there was no error in the charge in relation to hire. The whole charge, taken together, was simply this: the defendant must account for reasonable hire, and must also be allowed his divers disbursements, and that if after allowing all of them, there was still an overplus of hire, the jury ought to find such overplus. This is the fair construction of the charge, as a whole, and it was right. Besides the jury did not find any hire, and, therefore, the charge did not hurt the defendant. We are well satisfied with the verdict, and find no error in the record.

Judgment affirmed.